**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TRACY POWELL,

        Plaintiff,                      Case Number: 10-10503

v.                                           MARK A. GOLDSMITH
                                             UNITED STATES DISTRICT JUDGE

THE DETROIT MEDICAL CENTER d/b/a
TOTAL LINEN SERVICES,                    VIRGINIA M. MORGAN
                                             UNITED STATES MAGISTRATE JUDGE

        Defendant.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (Doc. No. 21)**

       In this Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* case, Plaintiff alleges that her employer, Defendant Detroit Medical Center, terminated her employment after receiving a report on her mental health issues. Before the court is Defendant's motion for summary judgment, filed November 30, 2010. (Doc. No. 21). Plaintiff did not file a response and the deadline to file a response has passed. Despite the lack of a written response, the court granted oral argument, which was held on February 9, 2011. Plaintiff appeared at the hearing. For the reasons discussed below, the court recommends that Defendant's motion for summary judgment be **GRANTED** and Plaintiff's complaint be dismissed with prejudice.

**I. Background**

       Plaintiff began working for Defendant as a laundry worker in August 2005. (Compl. ¶ 12). A little over a year later, in October 2006, Plaintiff's son and daughter were killed in a hit-and-run accident. (Compl. ¶¶ 14-16).

Following the death of her children, Defendant granted Plaintiff a four-week leave of absence, after which Plaintiff returned to work. (Compl. ¶¶ 17-18). After working for about a month, Plaintiff asked for a part-time work schedule based on a note from her internist, Dr. Dubin, that stated she could only work four hours a day due to severe depression. (Doc. No. 21, Def.'s MSJ Ex. 3, Barrera Decl. ¶ 6). That same day, Plaintiff also submitted a Family Medical Leave Act certification, also signed by Dr. Dubin, which stated that she could only work four hours per day due to depression. *Id.* On December 22, 2006, Dr. Dubin submitted another note stating that she could only work four hours per day. *Id.* at ¶ 7.

On February 7, 2007, Dr. Dubin submitted a note stating that Plaintiff was unable to work until February 28, 2007 due to depression and hypertension. *Id.* at ¶ 8. Plaintiff applied for short-term disability on February 19, 2007. *Id.* at ¶ 8. On February 28, 2007, Dr. Dubin submitted another note stating that Plaintiff would not be able to return to work until April 4, 2007. *Id.* at ¶ 9. However, Plaintiff did not return to work on April 4, 2007, and Dr. Dubin advised that she was unable to work due to depression and hypertension. *Id.* at ¶ 9.

Plaintiff met with Diane Barrera, the Controller and Administrative Director for Total Linen Services, and Judy Jackson, the Plant Manager, on May 11, 2007. *Id.* at ¶ 10. During the meeting, Plaintiff stated that she wanted to be taken off of disability and come back to work because she needed the money. *Id.* at ¶ 10. Shortly thereafter, Plaintiff submitted a note from Dr. Dubin that stated that she was able to return to work without restrictions. *Id.* at ¶ 10.

Per Defendant's policy, Plaintiff was required to undergo a fitness-for-duty examination before returning to work. (Doc. No. 21, Def.'s MSJ 4). Defendant's Corporate Medical Director for Occupational Health Services, Dr. Upfal, evaluated Plaintiff on May 29, 2007. (Doc. No. 21,

Def.'s MSJ Ex. 4, Upfal Decl. ¶ 2). Dr. Upfal concluded that Plaintiff needed a psychological examination and referred her to Dr. Freedman for an independent psychiatric evaluation. *Id.* at ¶ 9.

Dr. Freedman evaluated Plaintiff and issued a report on May 31, 2007. *Id.* at Attachment B. Dr. Freedman concluded that Plaintiff had personality related issues with dramatic and paranoid features and depression. *Id.* at Attachment B. Dr. Freedman opined that Plaintiff was unable to work for at least four to six weeks and that she should be cleared by her therapist or treating psychiatrist or psychologist before returning to work. *Id.* at Attachment B. At oral argument, Plaintiff represented to the court that she was continued to receive short term disability payments and her medical benefits during this time. This statement is consistent with a grievance form filled out by Plaintiff's union representative, Bryan Savoca, which stated that Plaintiff received 26 weeks of short-term disability benefits and medical benefits for one year after her last day of work[1], which was January 29, 2007. (Doc. No. 21, Def.'s MSJ Ex. K, 10/02/07 UNITE Grievance)

Barrera informed Plaintiff that based on Dr. Freedman's report she could not return to work until she was cleared by her therapist or psychiatrist. (Barrera Decl. ¶ 16). Barrera also told Plaintiff that her job would remain open and that she could seek a second opinion regarding her psychological ability to return. *Id.*

Plaintiff stated at the hearing that Barrera "verbally terminated" her but there are no papers to this effect. According to a letter from Savoca, Plaintiff's union representative, to Plaintiff, dated November 13, 2007, Plaintiff position remained open and she would be allowed to return to work

---

[1] As is shown by the documents, plaintiff was not terminated. The last day of "work" refers to her presence at the job site before she went on medical leave.

when she was cleared by a psychiatrist. (Doc. No. 21, Def.'s MSJ Ex. L, 11/13/07 Ltr.).

Even though Plaintiff had not presented documentation from her therapist or other mental health professional that she was cleared to work, by September 2007, Plaintiff was adamant that she could return to work. (Barrera Decl ¶ 17). At Plaintiff's request, Dr. Freedman re-evaluated her fitness-for-duty. *Id.* at ¶ 17.

After evaluating Plaintiff, Dr. Freedman concluded that she was not able to return to work and that her condition had worsened. *Id.* at ¶ 18. Defendant refused, therefore, to return Plaintiff to work "due to concerns about her safety and her operation of industrial equipment." *Id.* at ¶ 18. Plaintiff was informed that she would remain on medical leave, her position would remain open until January 29, 2008, and that she could provide a second opinion that she was able to work at anytime. *Id.* at ¶ 18.

Plaintiff filed a grievance with her union on October 2, 2007, alleging Defendant's refusal to return her to work was unreasonable. *Id.* at ¶ 19. At the grievance meeting, Defendant offered to hold Plaintiff's position open until January 29, 2008 but required that Plaintiff receive clearance from a board certified psychiatrist before returning to work. *Id.* at ¶ 19.

On December 3, 2007, Richard Beck, the Executive Director of the Associated Hospitals Processing Facility, wrote to Plaintiff to explain that she must present an opinion from a board certified psychiatrist that she is able to work before she could be returned to work and a note from Dr. Dubin, her internist, was not sufficient to return her to work because Dr. Dubin is not a psychiatrist. (Doc. No. 21, Def.'s MSJ Ex. M, 12/3/07 Ltr.). The letter further stated that Defendant would pay the cost for a psychological evaluation by a board certified psychiatrist of Plaintiff's choosing. *Id.*

4

When Plaintiff did not provide an opinion from a board certified psychiatrist that she was able to work by January 29, 2008, Defendant agreed to extend her leave of absence and medical coverage, and keep her position open until April 30, 2008. (Doc. No. 21, Def.'s MSJ Ex. N, 1/31/08 Ltr.).

As of April 2008, Plaintiff had not been cleared by a board certified psychiatrist, but Defendant again paid for her to be evaluated by Dr. Freedman. (Barrera Decl. ¶ 22). Dr. Freedman concluded that she had made remarkable improvement and cleared her to return to work. *Id.* at ¶ 23. Plaintiff returned to work in May 2008. *Id.* at ¶ 23. She has continued her employment to the present date.

Notwithstanding the fact that Defendant allowed her to return to work in May 2008, Plaintiff filed the instant complaint on February 4, 2010. (Doc. No. 1). Plaintiff alleges in her complaint that Defendant violated the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq*, and the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1101 *et seq.* Plaintiff also brought one count of intentional infliction of emotional distress. For the reasons discussed below, Plaintiff's complaint should be dismissed.

## II. Standard of Review u

The United States Court of Appeals for the Sixth Circuit has summarized the standard for summary judgment as follows:

> Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. "The judge is not to weigh the evidence and determine the truth of the matter, but rather determine whether there is a genuine issue for trial."

*Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405,

411-12 (6th Cir. 2008) (internal citations omitted).

## III. Analysis

Defendant argues that summary judgment should be granted on Plaintiff's disability discrimination claims because Plaintiff cannot establish that she was discriminated against due to her disability. (Doc. No. 21, Def.'s MSJ 10). Specifically, Defendant argues that Plaintiff cannot show that she was qualified to perform her job duties but Defendant nevertheless discriminated against her and she suffered an adverse employment action. *Id.* Defendant further argues that Plaintiff did not suffer an adverse employment action because she was never terminated from her position and Defendant kept her job open and extended her medical leave until she was able to return to work. *Id.* at 10-11.

When an employer moves for summary judgment on an ADA claim, the aggrieved employee must come forward with evidence that shows that there is an issue of genuine material fact on each of the following elements: "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir.1998) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir.1996)). Disability discrimination claims brought under the Michigan Persons with Disabilities Civil Rights Act are evaluated under the same standard as ADA claims. *See Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 n.3 (6th Cir. 1998).

In this case, it is undisputed that Plaintiff was disabled due to her mental health issues. However, Plaintiff has not provided the court with any evidence that creates a issue of genuine

material fact on the remaining elements of her ADA claim. Defendant has provided ample evidence, in the form of Dr. Freedman's reports, that Plaintiff was not qualified to return to work. Any attempt that Plaintiff would make to rely on Dr. Dubin's opinion regarding her fitness to return to work would be futile because Dr. Dubin acknowledged in his deposition that he did not disagree or dispute Dr. Freedman's assessments of Plaintiff's mental health. (Doc. No. 21, Def.'s MSJ Ex. 5, Dubin Dep. 48-49). In addition, Plaintiff has not provided evidence that she suffered an adverse employment decision. Plaintiff received 26 weeks of short-term disability benefits, her medical leave was extended until she was cleared for work, she never lost her medical insurance, and there is no documentation supporting her claim that she was terminated by Defendant. Plaintiff was not replaced, indeed Defendant allowed her to return to work as soon as she was cleared by Dr. Freedman, a board certified psychiatrist, in May 2008. Plaintiff has failed to show that an issue fact exists as to her disability discrimination claim. Accordingly, Defendant's motion for summary judgment as to Plaintiff's ADA and Michigan Persons With Disabilities Civil Rights Act claims should be granted.

Defendant is also entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim. To prevail on an intentional infliction of emotional distress claim, the plaintiff must show:"(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Vanvorous v. Burmeister*, 262 Mich. App. 467 (2004). Plaintiff has not come forward with any evidence that Defendant engaged in any conduct that comes remotely close to meeting the extreme and outrageous standard, nor is apparent from the record that Defendant engaged in any wrongdoing–period. Plaintiff's intentional infliction of emotional distress claim should be dismissed.

## IV. Conclusion

For the reasons stated above, the court recommends that the Defendant's motion for summary judgment be **GRANTED** and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arb*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1981). The filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: February 17, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on February 17, 2011.

s/J. Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan